1  William B. Federman (admitted *pro hac vice*)
2  FEDERMAN & SHERWOOD
   10205 N. Pennsylvania Ave.
3  Oklahoma City, OK 73120
   Telephone: 405-235-1560
4  Facsimile: 405-239-2112
5  Email: wbf@federmanlaw.com

6  *Attorneys for Plaintiff Benjamin L. Padnos*

7
                    **UNITED STATES DISTRICT COURT**
8                   **CENTRAL DISTRICT OF CALIFORNIA**
9                       **WESTERN DIVISION**

10 BENJAMIN L. PADNOS,
11 Derivatively on Behalf of CHINA          Master File No. 2:11-CV-08973 CAS (JCx)
   EDUCATION ALLIANCE, INC.,
12
13            Plaintiff,                     **NOTICE OF MOTION AND**
          v.                                **UNOPPOSED MOTION FOR FINAL**
14                                           **APPROVAL OF SETTLEMENT AND**
15 XIQUN YU, ZIBING PAN, SUSAN              **MEMORANDUM OF POINTS AND**
   LIU, CHANGQING WANG, JAMES              **AUTHORITIES IN SUPPORT**
16 HSU, LIANSHENG ZHANG, and              **THEREOF**
17 YIZHAO ZHANG,
                                            DATE:    October 15, 2012
18            Defendants,                    TIME:    10:00 a.m.
19                                           CTRM:    Courtroom 5, 2nd Floor
   CHINA EDUCATION ALLIANCE,               JUDGE:   Christina A. Snyder
20 INC., a North Carolina Corporation,
21
              Nominal Defendant.
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.      ISSUES TO BE DECIDED ........................................................................2

II.     INTRODUCTION ......................................................................................2

III.    OVERVIEW OF THE ACTION AND SETTLEMENT HISTORY ..............4

IV.     STANDARDS FOR FINAL APPROVAL OF A DERIVATIVE
        SETTLEMENT..........................................................................................7

V.      THE SETTLEMENT IS AN OUTSTANDING RESULT FOR CEU
        AND SHOULD BE APPROVED ...............................................................8

        a.      The Risks of Establishing Liability and Damages ...........................12

                i.      Liability ..............................................................................12

                ii.     Damages..............................................................................15

        b.      The Settlement Was Negotiated by the Parties with a Thorough
                Understanding of the Strengths and Weaknesses of Their
                Respective Positions...................................................................17

        c.      The Complexity, Expense, and Duration of Continued Litigation .....19

        d.      The Experience and Views of Counsel Favor Approval....................20

VI.     THE NEGOTIATED ATTORNEYS' FEE SHOULD BE APPROVED.....21

VII.    THE INCENTIVE AWARD SHOULD BE APPROVED ..........................24

VIII.   CONCLUSION........................................................................................25

# TABLE OF AUTHORITIES

Page

**CASES**

*Alaska Elec. Pension Fund v. Olofson*, No. 2:08-cv-02344-CM-JFO, slip
    op. (D. Kan. Aug. 25, 2010) ........................................................................23

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676
    (1980)........................................................................................................22

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005)..........................................19

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).............................................8

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980).........................7

*First Nt'l City Bank v. Banco Para El Comercio*, 462 U.S. 611 (1983) .................13

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ....................................................13, 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...........................................................21

*In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302
    (SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006).....................................8

*In re Blue Coat Sys., Inc. Derivative Litig.*, Master File No. C-06-4809-JF
    (RS), Revised Order and Final Judgment (N.D. Cal. Jan. 20, 2011) ...........24

*In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327 (D.N.J.
    2002) .............................................................................................................24

*In re Emerging Communications S'holders Litig.*, 2004 WL 1305745
    (Del. Ch. May 3, 2004).................................................................................15

*In re Extreme Networks, Inc. Derivative Litigation*, No. C-07-02268-
    RMW, slip op. (N.D. Cal. July 15, 2011)....................................................23

*In re F5 Networks, Inc. Derivative Litig.*, No. C06-794 RSL, slip op.
    (W.D. Wash. Jan. 6, 2011) ...........................................................................23

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S.
    Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002).............................................15

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
MEMORANDUM OF POINTS AUTHORITIES IN SUPPORT THEREOF – Case No.2:11-CV-08973-CAS
(JCx)

- ii -

Page

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ......................17, 18

*In re Oracle Sec. Litig.*, 852 F. Supp. 1437 (N.D. Cal. 1994)................................22

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)............................13, 19

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)...............16

*In re Rambus Inc. Derivative Litig.*, No. C 06-3513-JF (HRL), 2009 WL
      166689 (N.D. Cal. Jan. 20, 2009)................................................................22

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005); *aff'd*,
      906 A.2d 27 (Del. 2006)..........................................................................14

*Lewis v. Chiles,* 719 F.2d 1044 (9th Cir. 1983)........................................22

*Maurer v. Int'l Re-Insurance Corp.*, 95 A.2d 827 (Del. 1953) ...........................22

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593
      (1970)......................................................................................22

*Nat'l Rural Telecomms,* 221 F.R.D. 523 (C.D. Cal. 2004)............................. 19, 20

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982)
      ..................................................................................7, 8, 13, 17, 19, 21

*Pirelli Armstrong Tire Corp. Retiree Medical Benefit Trust v. Sinegal, et
al.,* No. 2:08-cv-01450, slip op. (W.D. Wash. June 10, 2011)......................23

*Ryan v. Gifford,* No. 2213-CC, 2009 WL 18143 (Del. Ch. 2009)..........................25

*Simon v. Toshiba America,* No. 07-06292, 2010 WL 1757956 (N.D. Cal.
      April 30, 2010)..........................................................................24

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ...............7, 8

*Unite Nat'l Ret. Fund v. Philip Watts*, No. 04CV3603, DMC, 2005 WL
      2877899 (D.N.J. Oct. 28, 2005) ...............................................................22

*Wilson v. Airborne, Inc.*, EDCV 07-770 VAP(OPX), 2008 WL 3854963
      (C.C. Cal. Aug. 13, 2008)............................................................... 24

Page

*Zilhaver v. UnitedHealth Group, Inc.,* 646 F. Supp. 2d 1075 (D. Minn.
    2009) ...........................................................................................25

**STATUTES**

N.C. Gen. Stat. § 55-7-44 ...............................................................13

**RULES**

Fed. R. Civ. P. 23.1(c)...............................................................7, 8

**OTHER AUTHORITIES**

John Du, *Observations on Doing Business in China*, 1897 PLI/Corp. 195,
    203 (Jul. 22, 2011) ...............................................................16

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11.50 (4th ed.
    2002)....................................................................................... 19

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on October 15, 2012, at 10:00 a.m. Plaintiff Benjamin L. Padnos ("Plaintiff") will appear before the Honorable Christina A. Snyder, District Court Judge, at the United States District Court for the Central District of California, 312 N. Spring Street, Courtroom 5, 2nd Floor, Los Angeles, California 90012, to present oral argument in support of Unopposed Motion for Final Approval of the Settlement (the "Motion").  The Motion seeks final approval of: (i) the proposed settlement in the above-entitled shareholder derivative action (the "Action") on the terms set forth in the Stipulation of Settlement, dated July 13, 2012 (the "Stipulation" or "Settlement"); (ii) an Order and Final Judgment dismissing the Action with prejudice and releasing and enjoining prosecution of any and all claims to be released pursuant to the Stipulation; (iii) the negotiated attorneys' fees and expenses provision in the amount of $250,000 (the "Fee Award"); and (iv) the incentive award for Plaintiff in the amount of $3,000 (the "Incentive Award"), which is part of the aforementioned $250,000.

The Motion is based on the accompanying Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement (the "Memorandum"); the Stipulation (Dkt. No. 25); the [Proposed] Order & Final Judgment (attached hereto); the Declaration of William B. Federman in Support of Application for Attorneys' Fees and Reimbursement of Expenses (the "Federman Decl.") (filed contemporaneously herewith); the Declaration of John F. Burns, Jr. in Support of Derivative Settlement and Award of Attorneys' Fees and Expenses (the "Burns Decl.") (filed as Exhibit D to Federman Decl.); and such additional evidence or argument as may be required by the Court. By their signatures to the Stipulation,

Plaintiff understands that all parties to the Actions support the relief sought in this Motion

## I.      ISSUES TO BE DECIDED

Is the Settlement, which provides for substantial Corporate Governance Enhancements to be enacted by China Education Alliance, Inc. ("CEU" or the "Company"), fair, reasonable and adequate such that final approval of the Settlement should be granted by the Court?

In view of the fairness, reasonableness and adequacy of the Settlement, and the substantial benefit to CEU and current CEU shareholders therefrom, should the Fee Award to Plaintiff's Counsel (and the Incentive Award to Plaintiff) negotiated between the Settling Parties be approved?

## II.     INTRODUCTION

This Memorandum is submitted in support of final approval of the Settlement of the shareholder derivative claims brought on behalf of CEU against certain of its current and/or former directors and top officers (the "Individual Defendants")[1] for allegedly engaging in accounting improprieties and mismanagement. The Settlement represents an outstanding result for CEU and current CEU shareholders and is the product of extensive arm's-length negotiations between Plaintiff and Defendants, with the substantial assistance of JAMS mediator Michael Young.

---

[1] "Individual Defendants" refers to Xiqun Yu, Zibing Pan, Susan Liu, Chunqing Wang, James Hsu, Liansheng Zhang, and Yizhao Zhang. All capitalized terms herein shall have the same meaning as set forth in the Stipulation. All Settling Parties support the request for final approval of the proposed Settlement.

As a result of the filing, prosecution and Settlement of the Action, CEU has adopted significant corporate governance reforms ("Corporate Governance Enhancements") that confer meaningful and substantial benefits upon CEU and current CEU shareholders. *See* Attachments A and B to Stipulation (Dkt. Nos. 25-1 and 25-2). These Corporate Governance Enhancements not only address the governance failures that Plaintiff alleges contributed to the accounting irregularities and improper financial reporting at CEU, but also strengthen CEU's overall governance and internal control systems. *Id*. As Plaintiff's expert John F. Burns, Jr. ("Burns") opines:

> Many of the governance enhancements required by the Settlement greatly exceed regulatory requirements and are designed to strengthen internal controls and oversight, thus directly addressing allegations in the Complaint regarding the Company's revenue recognition and financial disclosure issues. These reforms will have a long-lasting positive effect on the Company that will benefit it and its shareholders in the years to come. It is my opinion…that these changes, once fully implemented, will not only protect CEU and its stockholders from the type of losses they experienced as a result of the conduct alleged in the Action, they are also worth or potentially will be worth millions of dollars to CEU over time.

Burns Decl., ¶11 (attached as Ex. D to Federman Decl.).

Indeed, CEU has affirmed that the Settlement is in its best interests because the corporate governance measures are designed to provide the Company with "substantial improvements in CEU's corporate governance." *See* Stipulation at ¶3.1; *see also* Notice of Proposed Settlement at 10 (Ex. B to Stipulation; Dkt. No. 25-4).

In recognition of the substantial benefits conferred upon the Company as a result of the Settlement, CEU has agreed to pay Plaintiff's Counsel $250,000 in fees and costs.  *See* Stipulation, ¶5.1.  The Settling Parties, with the assistance of mediator Michael Young, agreed to the Fee Award provision only after the principal terms of the Settlement were agreed upon as a result of extensive negotiations.

In light of his efforts and commitment in connection with obtaining the substantial benefits conferred upon CEU as a result of the Settlement, Plaintiff requests Court approval of a modest Incentive Award in the amount of $3,000.  As detailed in his declaration, absent Plaintiff's participation in the Action, the Settlement, and the substantial benefits it confers upon CEU, would not have been achieved.  *See* Declaration of Benjamin Padnos (attached as Ex. E to Federman Decl.).

In sum, the Settlement represents an outstanding resolution for CEU. Accordingly, Plaintiff respectfully submits that the Settlement, including the negotiated amount of attorneys' fees and the incentive award should be approved.

## III.   OVERVIEW OF THE ACTION AND SETTLEMENT HISTORY

The Action is brought on behalf of Nominal Defendant CEU, a North Carolina corporation headquartered in Harbin, in the Heilonjiang Providence in Northwest China.  CEU provides online education materials and on-site tutoring and education through CEU's training center in Harbin. *See, e.g.*, Dkt. No. 1 (Complaint), ¶¶2-3.[2] CEU has no operating business or assets in the United States.

---

[2] References herein to "Dkt. No." are to documents filed in 2:11cv-08973 CAS (JCX) unless otherwise indicated.

On November 29, 2010, the analyst firm Kerrisdale Capital published a detailed report asserting that CEU had fabricated its SEC financial statements, that CEU's actual revenues and profits were substantially lower than the figures portrayed in the Company's SEC filings, and that CEU's operations were largely exaggerated. *Id.* ¶¶10 & 54-107.

Beginning on December 2, 2010, multiple securities fraud class actions were filed in this Court, in which CEU and several of the Individual Defendants were named as defendants.  On March 1, 2011, these actions were consolidated into one action, *In re China Education Alliance, Inc. Sec. Litig.*, No. CV 10-9239 CAS (JCx) (the "Securities Action"), and a Lead Plaintiff and a Lead Counsel were appointed.  *See* Securities' Dkt. No. 17.[3]  On May 2, 2011, the Lead Plaintiff in the Securities Action filed a Consolidated Amended Complaint for Violation of the Federal Securities Laws. *See* Securities' Dkt. No. 20.  On October 11, 2011, this Court denied CEU's motion to dismiss the Securities Action in its entirety. *See* Securities' Dkt. No. 61.  On April 4, 2012, the Court denied defendant Hsu's motion to dismiss the Securities Action but granted defendants' L. Zhang and Y. Zhang's motions. *See* Securities' Dkt. No. 113.

Shortly after the Securities Action was commenced in this Court, on July 11, 2011 Plaintiff submitted a shareholder demand letter to the Board of CEU.  *See* Dkt. No. 1, Ex. 2.  After Plaintiff's shareholder demand letter was ignored by the CEU Board, Plaintiff filed the current Action on October 28, 2011.  *See* Dkt. No. 1 (the

---

[3] References herein to "Securities Dkt. No." are to documents filed in 2:10-cv-9239 CAS (JCx) unless otherwise indicated.

"Complaint"). The Complaint alleges that from at least March 15, 2008 to the present (the "Relevant Period"), the Individual Defendants caused CEU to overstate revenues and profits by, *inter alia*, falsifying financial statements filed with the United States Securities and Exchange Commission (the "SEC") in violation of Generally Accepted Accounting Principles ("GAAP") and have thus breached the fiduciary duties they owe to the Company and its shareholders. *See, e.g., id.* ¶¶5-14, & 54-107. The Complaint further alleges that the Individual Defendants have continued to breach their fiduciary duties by failing to remedy the aforementioned acts. ¶123.

On November 18, 2011, Plaintiff's Counsel, on behalf of Plaintiff, sent a settlement demand letter (the "Settlement Demand") to counsel for CEU and the Individual Defendants. *See* Stipulation, ¶2.3. The Settlement Demand, *inter alia,* summarized the allegations and claims asserted by Plaintiff on behalf of the Company in the Action, and demanded the Company's agreement to a series of proposed corporate governance reforms, which were specifically tailored to address and prevent a recurrence of the alleged wrongdoing that is the subject of the Action.

After exchanging certain information, including mediation statements, on December 20, 2011, the Settling Parties participated in a formal mediation before Michael Young, a JAMS mediator, at the New York offices of JAMS. *See* Stipulation, ¶2.4. Although the Settling Parties made some progress at the mediation, the Action did not settle at that time. *Id*. The mediation, however, served as a springboard for continued settlement discussions which occurred throughout the winter and spring of 2012. *Id*. These settlement discussions included a meeting at Defense Counsel's New York offices on January 6, 2012, as well as multiple telephone conferences and email exchanges with the mediator and directly between the parties, during which settlement

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No.2:11-CV-08973-CAS (JCx)

- 6 -

terms and conditions were proposed and negotiated. *Id*. Ultimately, the Settling Parties were able to reach an agreement-in-principle on the settlement terms, which ultimately culminated in the proposed settlement reflected in the Stipulation.

## IV.   STANDARDS FOR FINAL APPROVAL OF A DERIVATIVE SETTLEMENT

Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval.  Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).

In *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), the Ninth Circuit set forth the factors which should be considered in evaluating the fairness of a class action settlement, certain of which are applicable to a derivative settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. at 625; *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The district court must exercise "sound discretion" in evaluating a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d

939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. However, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (noting that a "'mediator's involvement in . . . settlement negotiations helps ensure that the proceedings were free of collusion and undue pressure'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

## V.    THE SETTLEMENT IS AN OUTSTANDING RESULT FOR CEU AND SHOULD BE APPROVED

As a result of extensive negotiations, the Settling Parties, with the assistance of mediator Michael Young, have agreed to a resolution of the Action that provides substantial benefits to CEU and current CEU shareholders. The Settlement that was achieved as a direct result of the filing and prosecution of the Action requires the Board of CEU to adopt robust and systemic corporate governance provisions that substantially benefit CEU and CEU shareholders. Thus, as a result of the Settlement, CEU has a better-managed Company, that, among other things, strengthens revenue recognition practices, enhances internal audit procedures, and requires significant oversight of its operations, all of which were at the bedrock of Plaintiff's claims in this Action. The Company and the Board acknowledge that the commencement and litigation of the Action is a material factor in causing CEU to agree to implement the

corporate governance measures and agree that the corporate governance measures set forth in the Settlement confer substantial benefits on CEU and its shareholders. *See* Stipulation, at ¶3.1.

The Settlement provides that CEU shall implement and/or maintain Corporate Governance Enhancements that provide substantial benefits to CEU and current CEU shareholders. Burns Decl., ¶¶25-36. Burns explains the important system of "checks and balances" that strong corporate governance provides to permit a "transparent accountable system for promoting objectively determined goals and benchmarks." *Id.*, ¶19. Translating the value of these checks and balances into tangible benefits, Burns recites studies documenting that seventy-five percent (75%) of institutional investors reported that "board practices are at least as important to them as financial performance" and that "over eighty percent (80%) of investors" would pay more for a company with solid governance practices. *Id.*, ¶¶20-21. The Burns Decl. also provides data from additional studies supporting the "premise that public corporations exhibiting corporate governance practices reflecting strong shareholder rights exhibit greater value, greater stock price performance, and greater operating performance than firms with weak shareholder rights." *Id.*, ¶21. As stated by Burns, these "studies and comments confirm what is intuitively apparent: shareholders want their companies to be honestly managed and want the financial performance of their firms to be accurately reported." *Id.*, ¶22. Burns further explains that requiring CEU to implement rigorous corporate governance standards will be particularly valuable in light of certain "inherent weaknesses in the corporate governance practices" adopted by Chinese companies that access U.S. public markets through reverse merger. *Id.,* ¶37. Burns, therefore, concludes that "[t]he governance enhancements CEU will make in

connection with the proposed Settlement, therefore, will bring substantial value to the Company and its shareholders." *Id.*, ¶22.

Burns undertakes a detailed analysis of each of the Governance Enhancements, setting forth the reasons why each proposed reform provides substantial benefits to CEU and CEU shareholders. *Id.*, ¶¶26-36. He notes that adopting and implementing the corporate governance enhancements contemplated by the Settlement will succeed in adding meaningful safeguards against potential accounting irregularities like those alleged in the Complaint to have caused Defendants' breaches of fiduciary duties. *Id.*, ¶39. Additionally, Burns explains that "by publicly adopting heightened corporate governance measures, the Company will be increasing its value to shareholders by demonstrating its commitment to sound and honest internal controls and financial reporting practices, thereby refuting any stigma that may be associated with CEU as a result of its status as a China-based reverse-merger company and as a further result of the securities class actions that were filed against the Company and certain of its officers and/or directors." *Id.*

Turning to the specific Governance Enhancements, Burns opines that they will "ensure that the Company's financial accounting is accurate"; will "improve[] procedures, oversight, and training"; and will "require increased communication between the Board and the Company's auditors." *Id.*, ¶25. For example, Burns explains that requiring an annual meeting between CEU's management, the Board, and its independent auditor to review the Company's accounting methods and application of GAAP will provide CEU's officers and directors with specific GAAP instruction and will hold these managers accountable to GAAP standards when the outside auditor conducts its annual review of CEU's financial statements. *Id.*, ¶28. Another

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No.2:11-CV-08973-CAS (JCx)

- 10 -

important governance enhancement highlighted by Burns is the requirement "that the majority of the Board be independent, setting specific criteria that a director must satisfy in order to be deemed 'independent,' and requiring that the independent directors meet at least twice annually outside of the presence of any management director." *Id.,* ¶33. Burns explains that this requirement "will significantly enhance the Board's ability to provide objective and uninfluenced oversight of the Company's financial reporting practices and its internal controls." *Id.* Moreover, Burns explains that independent oversight will be further enhanced by the requirement that any complaints (including those made by CEU employees) be fully investigated by the Board's independent members. *Id.,* ¶34.

Yet another Governance Enhancement Burns discusses at length, and characterizes as the "most striking" feature of the governance reforms, is the adoption and implementation of a Code of Business Conduct and Ethics for China Education Alliance, Inc. (Attachment B to the Stipulation) ("Code of Conduct"). *Id.,* ¶35. Burns finds that the Code of Conduct "create[s] a system of individual accountability that specifically tasks each employee at the Company with ensuring accurate and comprehensive books and records keeping as well as fully compliant financial disclosures." *Id.* Among the Code of Conduct standards discussed by Burns are: the requirement that employees ensure that CEU's books, records, transactions, and public disclosures be accurate and complete and further establishing an "open door" policy for the Audit Committee to address employee concerns; the requirement that the CEO, CFO, principal accounting officer and all senior financial officers notify the Audit Committee of any material information that may affect the Company's financial disclosures, any information suggesting a significant deficiency in the internal controls

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No.2:11-CV-08973-CAS (JCx)

- 11 -

over financial reporting, and any information suggesting fraud with regard to CEU's financial reporting; specifically tasking the CFO with direct responsibility for implementing effective disclosure controls and procedures, which will be regularly tested by the Company; and the requirement that employees must assist with monitoring compliance of the Code of Conduct and establishing a confidential whistleblower hotline that employees can use to raise concerns. *Id.,* ¶36. Burns explains that "[b]y imposing the [Code of Conduct's] standards on CEU, the Settlement achieves the difficult task of bringing the corporate governance practices of a China-based company in-line with the more rigorous corporate governance standards of U.S.-based companies." *Id.,* ¶37.

The significant governance reforms achieved through the Settlement not only address the alleged accounting improprieties at CEU, but also obtain other significant reforms which elevate CEU to be a better governed company with stronger internal controls and greater independent oversight. Burns Decl., ¶39 ("By adopting and implementing the aforementioned corporate governance enhancements, the Settlement succeeds in adding meaningful safeguards against potential accounting irregularities... [and] increases [CEU's] value to shareholders by demonstrating its commitment to sound and honest internal controls and financial reporting practices." *Id.,* ¶39. Accordingly, the Settlement represents an outstanding resolution for CEU in a case of substantial complexity and costs.

### a.   The Risks of Establishing Liability and Damages

### i.   Liability

In assessing the fairness, reasonableness, and adequacy of a settlement, the court should balance the benefits of the settlement against the continuing risks of litigation.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No.2:11-CV-08973-CAS (JCx)

- 12 -

1 | *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Officers for Justice*, 688 F.2d at

2 | 625. There is no question that derivative actions are complex and fraught with risk.

3 | Indeed, the Ninth Circuit, in affirming the district court's approval of a settlement of a

4 | derivative action, noted that "the odds of winning [a] derivative lawsuit [are] extremely

5 | small" because "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec.*

6 | *Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This Action was no different.

7 |

8 | Here, Defendants were prepared to file a motion to dismiss the Action in its

9 | entirety. Given the quality of counsel representing the Defendants, this motion would

10 | be comprehensive in scope. Indeed, at mediation, Plaintiff was presented with the fact

11 | that Defendants were prepared to contest virtually every aspect of the Action. As one

12 | example, Defendants argued that the Action would be subject to mandatory dismissal

13 | by the Court should a committee of independent directors conclude that maintaining

14 | the derivative action was not in the best interests of the Company. *See* N.C. Gen. Stat.

15 | § 55-7-44.[4]

16 |

17 | Although Plaintiff believes that the claims asserted in the Action are meritorious,

18 | liability was by no means assured. Had Plaintiff continued to litigate the Action, there

19 | was a risk that Plaintiff would not have been successful in defending against the

20 | motion to dismiss, and other pre-trial motions Defendants would have filed that would

21 | be designed to eliminate or curtail the claims. Further, even if Plaintiff was successful

22 | and survived such motions, continued litigation would be extremely complex, costly,

23 | and of substantial duration. Document discovery would need to be completed,

24 |

25 |

26 | [4] Pursuant to the internal affairs doctrine, North Carolina law governs this issue because CEU is incorporated in North Carolina. *See First Nt'l City Bank v. Banco*

27 | *Para El Comercio*, 462 U.S. 611, 621 (1983).

28 |

depositions would need to be taken, experts would need to be designated, and expert discovery conducted.  Defendants' expected motions for summary judgment would have to be briefed and argued and a trial would have to be held.  Indeed, significant risks remained in prevailing against Defendants' anticipated motions for summary judgment and obtaining a favorable judgment after trial.

Further, to prevail at trial, Plaintiff would have had to overcome the protections afforded the Individual Defendants under the "business judgment rule."  Undoubtedly, Defendants would have sought the application of the "business judgment rule's" protections with respect to many of the acts challenged by Plaintiffs. *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 746 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).  Although referred to as a "rule," the idea of "business judgment protection" for directors is more akin to a broad doctrine or concept, and it is perhaps, the fundamental precept of corporate law. *See generally id.* at 746-47.  While the business judgment rule (and the protections it affords directors) has been articulated in slightly varied ways (and has taken varied forms), it essentially stands for the proposition that there is a strong presumption that, in making a disinterested business decision, the directors of a corporation acted on an informed basis, in good faith, and with the honest belief that the action taken was in the best interests of the corporation. *Id.*  Although Plaintiff believes in their arguments against the protections afforded by the "business judgment rule" with respect to the acts challenged in the Action, the prospect that Defendants could have been shielded by this protective umbrella made establishing liability in the Action uncertain.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No.2:11-CV-08973-CAS (JCx)

- 14 -

### ii.   Damages

Even if Plaintiff was successful in establishing liability, to establish damages at trial, they would have had to prove, among other things, that CEU actually suffered non-exculpated damages and that the Defendants, as a matter of law, could be held liable for those damages.  Under traditional applications of corporate law, Plaintiff faced a formidable challenge establishing and collecting monetary damages in the Action.

Undoubtedly, Plaintiff faced the likelihood that the Defendants would assert that CEU's articles of incorporation contained exculpatory provisions which shielded them from potential liability.  While Plaintiff believes that he had strong arguments to overcome the protections afforded by CEU's "liability raincoat provision" with respect to many of the acts challenged in the Action, the prospect that Defendants could have been indemnified by these exculpatory provisions made establishing damages in the Action uncertain.

Moreover, the issue of damages to CEU would have been hotly disputed and clearly would have been the subject of expert testimony proffered by all parties.[5]  The damages assessments of experts retained by the parties would surely vary substantially and the assessment of this crucial element of Plaintiff's claims would be reduced at trial to a "battle of the experts."  *See, e.g.*, *In re Emerging Communications S'holders Litig.*, 2004 WL 1305745, at *11 (Del. Ch. May 3, 2004).  It is far from certain that a

---

[5] *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable").

1    jury would have disregarded Defendants' experts' opinions.  Indeed, a jury might be

2    swayed by defense experts seeking to establish that damages were caused by factors

3    other than Defendants' wrongdoing, or, alternatively, trying to minimize the amount of

4    the Company's damages.  *See, e.g.*, *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D.

5    104, 129 (S.D.N.Y. 1997).  Conceivably, a jury could find that there were no damages

6

7    or that the damages were a mere fraction of the amount asserted by Plaintiff.

8        Additionally, even if Plaintiff succeeded in proving damages, Plaintiff's ability

9    to successfully obtain a monetary recovery from Defendants is far from certain.

10   Because all of CEU's assets are located in the People's Republic of China ("PRC") and

11   because most of CEU's officers and directors reside in the PRC, Plaintiff would be

12   faced with the added difficulty of seeking enforcement of the judgment in China.  As

13   Burns explains, "[a] judgment obtained by a foreign party outside China has little

14
     effect on a Chinese entity if that entity does not have assets outside China subject to
15

16   collection."  *Id.*, ¶41; *see* John Du, *Observations on Doing Business in China*, 1897

17   PLI/Corp. 195, 203 (Jul. 22, 2011).

18       Based upon the record and applicable law, it is clear that there were serious risks

19   in overcoming potential defenses and in establishing liability.  And even if liability was

20   established, the amount of recoverable damages would still have posed significant

21   issues and would have been subject to further litigation.  Finally, assuming that
22
     Plaintiff could establish liability and damages, substantial uncertainty would still exist
23

24   as to the ability of Plaintiff to collect the monetary damages in the PRC.  Thus, as

25   opposed to the very real risk of no recovery at all for the Company, the Settlement

26   guarantees an outstanding result requiring the implementation and maintenance of the

27   valuable Corporate Governance Enhancements.  Burns Decl., ¶43 ("[I]t is my

28

conclusion that the proposed settlement in this matter is a significant accomplishment, both in scope and substance."). Accordingly, the Settlement provides substantial benefits to CEU and current CEU shareholders that outweigh the risks of further litigating the Action.

> **b.     The Settlement Was Negotiated by the Parties with a Thorough Understanding of the Strengths and Weaknesses of Their Respective Positions**

The stage of the proceedings and the amount of discovery completed is another factor which courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *Officers for* Justice, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. Notwithstanding that it has been nearly two years since the public became aware of potential accounting irregularities and revenue recognition issues at CEU, the Settlement comes at a relatively early stage in the proceedings, thus avoiding the potential for the expense of protracted discovery and trial preparation, the cost of time and attention diverted from the day-to-day business operations of the Company, and of course the burden to the Court of protracted and complex litigation. Ninth Circuit law is quite clear that "'formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations omitted). Indeed, both the knowledge of Plaintiff and the proceedings of this Action and the Securities Action have reached a stage where an intelligent evaluation of the Action and the propriety of settlement can be made.

Before issuing a demand letter and filing the Complaint and continuing thereafter, Plaintiff and Plaintiff's Counsel conducted an extensive investigation of the allegations asserted in the Action. Plaintiff and/or Plaintiff's Counsel analyzed

documents, including financial reports, press releases, and SEC filings concerning CEU; researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; reviewed and analyzed the extensive record in the Securities Action; researched various corporate governance issues; participated in numerous telephonic conferences with mediator Michael Young and Defendants' counsel; attended a formal mediation with Defendants' counsel and Michael Young; and worked with an expert to consider meaningful governance changes that would effectively reform the corporate governance at CEU. *See* Federman Decl., ¶7 and Ex. E thereto.   Thus, Plaintiff and Plaintiff's Counsel developed a high degree of knowledge that allowed them to gauge the relative strengths and weaknesses of the Settling Parties' respective positions during the course of negotiating the Settlement.

The extensive investigation, the lengthy arm's-length settlement discussions as well as Plaintiff's Counsel's past experience in litigating similar actions, provided Plaintiff not only with a clear picture of the strengths and weaknesses of the Action, but also of the sufficiency of the legal and factual defenses that Defendants would raise if litigation of the Action were to continue.  Having enough information to properly evaluate the claims and defenses to be asserted, Plaintiff and Plaintiff's Counsel have managed to resolve the Action on a highly favorable basis for the Company and CEU shareholders without the substantial expense, risk, delay, and uncertainty of continued litigation.  Hence, the Settling Parties reached an agreement to settle the Action at a point when they had an adequate understanding of the legal and factual issues surrounding the Action. *Mego Fin.*, 213 F.3d at 459.

**c.      The Complexity, Expense, and Duration of Continued Litigation**

Another factor militating in favor of the Settlement is the complexity, expense, and likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 859 (E.D. Mo. 2005). Shareholder derivative actions are notoriously complicated actions that involve convoluted legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time. *Pac. Enters.*, 47 F.3d at 378 ("the odds of winning [a] derivative lawsuit [are] extremely small" because "derivatively lawsuits are rarely successful"); *Cohn*, 375 F. Supp. 2d at 852 ("'Settlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable.'"). The current Action is not an exception to this rule.

The Settlement provides immediate and substantial benefits to CEU and avoids years of delay, added expense, and uncertainty. A prolonged period of pretrial proceedings and a lengthy and uncertain trial would not serve the interests of the Company and its shareholders in light of the substantial benefits provided by the Settlement. Indeed, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11.50, at 155 (4th ed. 2002); *Nat'l Rural Telecomms*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("It has been held proper to take the bird in the hand instead of a prospective flock in the bush."). Thus, the prospect of continued, protracted, expensive, and uncertain litigation strongly supports approval of the Settlement.

**d.      The Experience and Views of Counsel Favor Approval**

Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of those affected by the settlement – here, CEU and current CEU shareholders. *Officers for Justice*, 688 F.2d at 625. Plaintiff and CEU, through the respective counsel for each, have independently considered the Settlement and all agree that it is in the best interest of CEU and current CEU shareholders. Notice of Proposed Settlement at 10 (Dkt. No. 25-4); Stipulation, ¶3.1.

Here, Plaintiff's Counsel have extensive experience in the area of shareholder representative litigation in courts nationwide. As a result of their experience in complex shareholder litigation, Plaintiff's Counsel have unique insight into the legal and factual issues presented in the Action. *See Nat'l Rural Telecomms Coop.*, 221 F.R.D. 523, at 528 ("'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts underlying litigation.'") (citations omitted). Plaintiff's Counsel used their expertise and experience to prosecute the Action and reach an excellent result for CEU and current CEU shareholders.

In sum, the Settlement provides substantial governance benefits to CEU, and represents an outstanding resolution for CEU in a case of substantial complexity and costs. Accordingly, the Settlement should be approved.[6]

---

[6]As set forth in the Court's August 13, 2012 Order Preliminarily Approving Settlement, Dkt. No. 34, the deadline for CEU's shareholders to object to the Settlement is September 24, 2012 (*i.e.*, 21 days prior to the Settlement Hearing). To date, none of the Settling Parties have received notice of any objections to the Settlement. However, given that the deadline to file objections has not passed, Plaintiff's Counsel will address any such objections, should they be filed, in a reply brief in further support of the Settlement.

## VI.   THE NEGOTIATED ATTORNEYS' FEE SHOULD BE APPROVED

Plaintiff's Counsel's efforts in prosecuting the Action and negotiating the Settlement have conferred significant benefits upon CEU.  In recognition of these substantial benefits, CEU has agreed to cause Plaintiff's Counsel to be paid, and their expenses reimbursed, in the amount of $250,000, from which Plaintiff is proposed to be paid the sum of $3,000 as an incentive award, subject to the Court's approval.  *See* Stipulation at ¶5.1.  Plaintiff's Counsel and counsel for CEU, with the assistance of mediator Michael Young, agreed to the attorneys' fee and expense provision after the principal terms of the Settlement had been reached.  The amount of the Fee Award is also fair and reasonable.  *See* Burns Decl., ¶42 ("In my opinion, the fees and reimbursement of expenses being sought by Plaintiff's Counsel are very fair and reasonable in view of the substantial benefits to the Company and its current stockholders derived from the filing, prosecution, and Settlement of the Action and in view of the potential risks and comparable attorney fee awards.").

The U.S. Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal toward which litigants should strive.  In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  Similarly, in *Officers for Justice*, 688 F.2d 620, the Ninth Circuit recognized that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties,

and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 625.

Moreover, the parties' arm's-length negotiations resulted in an attorneys' fee and expense provision that recognizes the substantial benefits obtained for CEU and CEU shareholders, and is within the range of negotiated fees paid in similar derivative cases. *See* Burns Decl., ¶40. Case law provides that plaintiffs' counsel who prosecute a shareholder derivative case that confers benefits upon the corporation are entitled to an award of attorneys' fees and costs under the "substantial benefit" doctrine. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970); *Maurer v. Int'l Re-Insurance Corp.*, 95 A.2d 827 (Del. 1953).[7] In *Mills*, the Supreme Court stated that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." 396 U.S. at 395-96; *see also Lewis v. Chiles,* 719 F.2d 1044, 1049 (9th Cir. 1983) (in a derivative suit, a "court may make [an attorney's fees] award even when the benefit is non-pecuniary and there is no fund out of which to pay the fees."); *Unite Nat'l Ret. Fund v. Philip Watts*, No. 04CV3603, DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) (court awarded fee

---

[7] The federal standards governing fee awards in derivative litigation are functionally identical to Delaware's. *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994).

of $9.2 million for purely therapeutic relief and noted that it based the award on "the great benefit conferred upon Shell as a result of the new corporate governance principles provided for in the settlement agreement" that "will serve to prevent and protect Shell from the reoccurrence of certain alleged wrongdoing"). Indeed, the $250,000 negotiated Fee Award here is not only appropriate, but it is below the range of agreed-upon fees approved by district courts within the Ninth Circuit for corporate governance relief in similar derivative cases. *See In re Rambus Inc. Derivative Litig.*, No. C 06-3513-JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ($2 million fee approved in derivative settlement where corporate governance reforms were adopted); *In re Extreme Networks, Inc. Derivative Litigation*, No. C-07-02268-RMW, slip op. at ¶9 (N.D. Cal. July 15, 2011) (approving $3.5 million attorneys' fee in connection with corporate governance settlement) (Federman Decl., Ex. F); *Pirelli Armstrong Tire Corp. Retiree Medical Benefit Trust v. Sinegal, et al.*, No. 2:08-cv-01450, slip op. at ¶10 (W.D. Wash. June 10, 2011) (approving $4.75 million attorneys' fee in connection with corporate governance settlement) (Federman Decl., Ex. G); *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794 RSL, slip op. at ¶8 (W.D. Wash. Jan. 6, 2011) (approving $5 million attorneys' fee in connection with corporate governance settlement in stock option backdating derivative action) (Federman Decl., Ex. H); *Alaska Elec. Pension Fund v. Olofson*, No. 2:08-cv-02344-CM-JFO, slip op. at ¶8 (D. Kan. Aug. 25, 2010) (approving $3.5 million attorneys' fee in connection with corporate governance settlement) (Federman Decl., Ex. I).

Here, there is no question that the Settlement achieved as a result of Plaintiff's Counsel's efforts conferred substantial benefits upon CEU and current CEU shareholders. Stipulation at ¶3.1; Burns Decl., ¶¶11-12, 25-39. Indeed, the Corporate

Governance Enhancements obtained in the Settlement will not only reduce the chance of the improprieties alleged by Plaintiff occurring in the future, but also will make the CEU Board more effective representatives of CEU shareholders, thus providing additional substantial benefits and value to CEU. *Id.* Accordingly, the separately negotiated Fee Award should be approved.

## VII.   THE INCENTIVE AWARD SHOULD BE APPROVED

The Stipulation provides for an Incentive Award to be paid to Plaintiff in the total amount of $3,000 (deducted from the Fee Award). *See* Stipulation, ¶5.1. Plaintiff is requesting payment of the Incentive Award based on his respective time, effort and service as representative plaintiff in the Action. Plaintiff has submitted a detailed declaration setting forth his participation in the Action. *See* Federman Decl., Ex. E. Absent the participation of Plaintiff, the Settlement would not have been achieved. By stepping forward on behalf of the Company, Plaintiff has contributed to the vitality and enforcement of the securities laws. *Id.* Moreover, the amount sought by Plaintiff is both modest and reasonable.

Indeed, incentive awards for plaintiffs in derivative actions are routinely awarded. Such awards are granted to reward the public service performed by plaintiffs in contributing to the vitality and enforcement of the securities laws. *See e.g.*, *Simon v. Toshiba America,* No. 07-06292, 2010 WL 1757956, at *5 (N.D. Cal. April 30, 2010) (approving $4,000 incentive award); *In re Blue Coat Sys., Inc. Derivative Litig.,* Master File No. C-06-4809-JF (RS), Revised Order and Final Judgment (N.D. Cal. Jan. 20, 2011) (granting $2,000 service awards to each plaintiff) (Federman Decl., Ex. J); *Wilson v. Airborne, Inc.,* EDCV 07-770 VAP(OPX), 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) (granting an incentive award of $2,500); *In re Cendant Corp.,*

*Derivative Action Litig.,* 232 F. Supp. 2d 327, 344 (D.N.J. 2002) ($25,000 incentive award approved); *Zilhaver v. UnitedHealth Group, Inc.,* 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (noting that plaintiffs who "step forward" to commence lawsuit are entitled to $15,000 each); *Ryan v. Gifford,* No. 2213-CC, 2009 WL 18143, at *14 (Del. Ch. 2009) (approving $5,000 to each plaintiff).

  As a result of the Plaintiff's efforts on behalf of CEU, the Company has received the substantial benefits contained in the Settlement. Accordingly, the Incentive Award should be finally approved.

## VIII. CONCLUSION

  The substantial Corporate Governance Enhancements obtained by virtue of the Settlement represent an outstanding result for CEU and its shareholders in a case of substantial complexity and costs. Accordingly, Plaintiff respectfully submits that the Settlement, the Fee Award, and Incentive Award are each fair, reasonable, and adequate, and should be approved by the Court.

Dated: September 14, 2012  FEDERMAN & SHERWOOD

       /s/William B. Federman
       William B. Federman (admitted *pro hac vice*)
       10205 N. Pennsylvania Ave.
       Oklahoma City, OK 73120
       Telephone: 405-235-1560
       Facsimile: 405-239-2112
       Email: wbf@federmanlaw.com

        -and-

       2926 Maple Ave., Suite 200
       Dallas, TX 75201

       Byron T. Ball (SBN 150195)
       THE BALL LAW FIRM, LLP
       10866 Wilshire Blvd., Suite 1400

Los Angeles, CA 90024
Telephone:  310-446-6148
Facsimile:  310-441-5386
Email: btb@balllawllp.com

*Attorneys for Plaintiff Benjamin L. Padnos*

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that foregoing was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on Friday, September 14, 2012.

                        /s/ William B. Federman
                        William B. Federman

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No.2:11-CV-08973-CAS (JCx)

- 26 -